**STATE of Maine**

v.

**Dalton R. PREBLE.**

Supreme Judicial Court of Maine.

Argued May 5, 1981.

Decided June 3, 1981.

Charles K. Leadbetter, Paula Van Meter, William R. Stokes (orally), Asst. Attys. Gen., Augusta, for plaintiff.

**554**

Perkins & Ewards, Richard Edwards, Guilford (orally), for defendant.

Before McKUSICK, C. J., and WER-NICK, GODFREY and CARTER, JJ.

McKUSICK, Chief Justice.

Defendant Dalton R. Preble appeals from the judgment of conviction for manslaughter, 17–A M.R.S.A. § 203 (Supp.1980), entered against him on a jury verdict in Superior Court (Piscataquis County). On appeal defendant directs his attack exclusively against the Superior Court's denial of his pretrial motion to suppress an oral confession and a subsequent written statement he gave to police officers in the early evening of August 8, 1979. He asserts that 1) prior to his oral confession the officers had detained or "seized" him in the Fourth Amendment sense, 2) at the time they detained him the officers did not have probable cause to believe he had committed the homicide they were investigating, and 3) his confessions were the "fruit of the poisonous tree," namely, the unlawful detention. The Superior Court justice who heard the suppression motion found that the officers did not detain defendant until after his oral confession,[1] by which time they did have probable cause. We find no reversible error in the Superior Court's decision and accordingly deny defendant's appeal.

Shortly after midnight on August 6, 1979, after receiving a report of a shooting, officer Charles Edgerly of the Dover-Foxcroft police department and deputy Gerald Rollins of the Piscataquis County sheriff's office arrived at the Guilford home of defendant and Marcia Goodwin. After passing defendant on the porch and entering the house, the officers found Marcia Goodwin lying on the floor with a bullet wound in the head. After the victim, who was still alive, had been taken to the hospital, the officers took defendant and the couple's young daughter to the home of defendant's mother in Parkman.

At 3:30 a. m. on that same morning of August 6, Detectives Charles Love and Richard Cook of the Maine State Police visited defendant at his mother's home and obtained from him a signed consent to search his residence. Defendant concedes that he voluntarily gave his written consent. Detective Love again went to the home of defendant's mother at 10:30 a. m. that same day for the purpose of further interviewing defendant. Given a choice, defendant elected to talk with Detective Love in the privacy of Love's unmarked automobile. After receiving *Miranda* warnings, defendant answered extensive questions about his activities during the hours prior to the shooting. The session in the car was interrupted by a telephone call for defendant from Marcia Goodwin's mother, and defendant then sent word out to Detective Love that he did not feel able to talk with anyone further. Love then left. Statements made by defendant to Love on August 6 were admitted in evidence at trial, and defendant on appeal does not challenge their admissibility.

On the next day, August 7, at approximately 3:00 p. m., Detective Cook went to the Dover-Foxcroft home of defendant's brother, Larry Preble, where defendant was then staying. After identifying himself as a state police officer, Detective Cook asked defendant if he would talk with him about the shooting the previous day, and gave defendant the option of talking either in the brother's home or in Cook's unmarked car. Defendant expressed a preference for talking in the car and they went for a ride on back roads in the vicinity. After being again informed of his *Miranda* rights, defendant told Cook that he understood those rights and was willing to speak with him.

---

1. The State has conceded that if the Superior Court justice erred in his finding of no detention prior to the oral confession, admitting the oral confession in evidence was erroneous, because the justice did not have evidence before him that was adequate to show either that the officers had probable cause to arrest prior to the oral confession or that either the oral or the subsequent written confession was obtained independently of such illegal detention. *State v. Ann Marie C.*, Me., 407 A.2d 715 (1979). We have no reason to determine whether the State's concession was required on the present facts.

Since the detective was unfamiliar with the area, he relied upon defendant for directions as they went for the drive. During their talk defendant made statements to Cook that were admitted at trial and that are not the subject of any claim of error on appeal.

Marcia Goodwin died on the afternoon of August 8. Early that evening the events occurred that are the specific subject of defendant's claim of error. While defendant, with his brother and his brother's wife, Clairanne Preble, was eating supper at the brother's home, Detective Cook again came to talk with defendant. This time Cook was accompanied by State Police Detective Rafnell. The latter stood in the driveway while Detective Cook went up to the house and knocked on the door. Larry Preble yelled "come in" as he got up from the table to meet Detective Cook. There was some conflict in the testimony of what next happened. Cook testified that upon encountering defendant at the supper table he told him, "I'd like to talk to you if you have a minute—words to that effect." According to Cook, defendant answered "Yes" or "Okay" and walked outside to Cook's car. All three Prebles testified that it was their impression that defendant had no choice but to go with Detective Cook. Defendant entered the officers' unmarked automobile on the front passenger side, and the trio drove away, with Detective Cook driving and Detective Rafnell sitting in the back seat. Neither officer was in uniform or armed. After reading defendant his *Miranda* rights, Detective Cook again drove along back roads near Larry Preble's home and stopped near an abandoned house. During questioning by Detective Cook, defendant told him that "he was very hazy about what happened but remember [sic] having an argument with Marcia and the gun going off." Detective Cook testified that defendant got very upset after making this incriminating statement. Cook then started back to the sheriff's office, also located in Dover-Foxcroft. The total time spent by defendant with the officers in the car was about half an hour.

At the sheriff's office defendant was placed in an interrogation room. After signing a written waiver of his *Miranda* rights, defendant made a written statement describing the events surrounding the death of Marcia Goodwin. Defendant was then formally arrested.

The Superior Court justice who heard the suppression motion found "that [no] formal arrest took place prior to that [August 8] interrogation in the automobile and that [d]efendant was not detained within the meaning of *Dunaway*"[2] prior to his making his oral confession. He also found that all of defendant's statements made during that interrogation were voluntary beyond a reasonable doubt.

On appeal we must sustain the Superior Court justice's ruling on the suppression motion "if, in accordance with the correct legal principle[s] . . . the evidence provides rational support for the conclusions he reached." *State v. Mitchell*, Me., 390 A.2d 495, 498 (1978), *citing and quoting State v. Collins*, Me., 297 A.2d 620, 625 (1972). The rule for determining when a Fourth Amendment detention or "seizure" has occurred is often easier to state than it is to apply.

A 'seizure' of the person has occurred, and Fourth Amendment rights arise, when 'the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen' such that he is not free to walk away.

*United States v. Viegas*, 639 F.2d 42, 44 (1st Cir. 1981), *citing Terry v. Ohio*, 392 U.S. 1, 16, 19 n. 16, 88 S.Ct. 1868, 1877, 1879 n. 16, 20 L.Ed.2d 889 (1968). Whether or not restraint to constitute a Fourth Amendment "seizure" has occurred should be judged on an objective basis. *Cf. State v. Kelly*, Me., 376 A.2d 840, 847 (1977) ("The perspective must be that of the outside observer who views the entirety of the situation"). Such an objective test was elucidated last year by

2. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

Justice Stewart[3] in *United States v. Mendenhall*, 446 U.S. 544, 554–55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980):

[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Terry v. Ohio, supra* [392 U.S.] at 19, n. 16 [88 S.Ct., at 1879, n. 16]; *Dunaway v. New York*, 442 U.S. 200 [207] and n. 6 [99 S.Ct. 2248, 2253, 60 L.Ed.2d 824]; 3 LaFave, Search and Seizure 53–55 (1978).

In the case referred to by the Superior Court in its ruling, *Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979), the Court held that a Fourth Amendment seizure had occurred when police had picked up Dunaway and taken him involuntarily to the police station for questioning. That case goes on to teach that if the restraint results in more than "the brief and narrowly circumscribed intrusions involved in [*Terry* and its progeny]," the validity of the detention depends upon satisfaction of the Fourth Amendment requirement of probable cause, exactly as does the validity of a traditional arrest.

We have no reason to doubt that the Superior Court justice in his ruling on December 10, 1979, applied the correct principle of law in finding that no *Dunaway* detention had occurred prior to the oral confession. Without elaboration he specifically referred to the *Dunaway* decision of five months earlier. In view of our own decision in *State v. Kelly, supra,* we have no doubt that the justice applied an objective test of whether detention or seizure of Preble had occurred, namely, whether in view of all the circumstances a reasonable person would have believed Preble was not free to leave. We are not convinced by the contrary argument constructed by defendant on the basis of a single remark made by the justice later in his oral ruling from the bench in finding that *Dunaway* detention *did* commence immediately upon defendant's confession:

The Court is satisfied certainly . . . that had [d]efendant subsequent to the admissions made in Detective Cook's automobile attempted—attempt to depart from the presence of the officers, that he would have been invited to remain, I don't need to speculate as to the . . . degree of physical force that might have been used.

The justice there was not applying a subjective test; he was not making the existence of Fourth Amendment detention turn on the subjective intent of the officers. Rather, it is very apparent from the context that he was stating what any reasonable person, once defendant had admitted involvement in the killing, would certainly expect of the officers. Objectively, he would know defendant's situation had then changed. Any reasonable person at that stage would realize he was no longer free to leave; he was then subject to *Dunaway* detention.[4] That is all we can read the justice to have said in the above-quoted remark.

---

3. Justice Rehnquist joined Justice Stewart's opinion. The other three justices who made up the 5–4 majority of the *Mendenhall* Court did not find it necessary to reach the Fourth Amendment "seizure" question, but Justice Powell, writing for them, stated that "I do not necessarily disagree with the views expressed in Part II–A" of Justice Stewart's opinion dealing with that question. The four dissenters did not take issue with Justice Stewart's statement of the objective standard of what is a Fourth Amendment seizure. *See United States v.*

*Mendenhall, supra,* 446 U.S. 544, 566, 569–77, 100 S.Ct. 1870, 1883, 1885–1889, 64 L.Ed.2d 497 (1980).

4. At that point, when the Superior Court justice found the Fourth Amendment seizure or detention first occurred, the officers had probable cause as a result of defendant's incriminating statement. The justice so found. Thus, defendant's written statement later made at the sheriff's office, following new *Miranda* warnings, was admissible.

Confident that the justice below applied the correct principles of law, we now must examine the record to determine whether "the evidence provides rational support for the conclusions he reached." *State v. Mitchell, supra* at 498. Alternatively, the remaining question can be put in terms of applying the "clearly erroneous" test to a lower court's findings of facts. On that analysis we must assume that the justice found as a fact that in view of all the relevant circumstances a reasonable person would have believed Preble was free to break off the questioning session in the automobile at any time up to his oral confession. *See State v. Broucher,* Me., 388 A.2d 907, 909 (1978). On review the question is then whether on the evidence of record that finding survives a "clearly erroneous" attack. *State v. Hassapelis,* Me., 404 A.2d 232, 237 (1979).

By either analysis this court finds no basis for upsetting the Superior Court's denial of defendant's suppression motion. Even though the testimony given by defendant and his brother and sister-in-law conflicted to some extent with that of the officers, the justice could rationally find that defendant freely chose to talk with Detective Cook in his car on the evening of August 8. The justice's finding draws particularly strong support from the evidence of the course of dealing between defendant and several officers over a period of more than two and a half days preceding the critical interview. He had voluntarily talked with Detective Cook and other officers, usually in their automobiles, at least four times in that period and on none of those occasions had he been prevented from breaking off the conversation or leaving when he wished to do so. In fact, on August 6 he had cut off further discussions with Detective Love, and on August 7 he had been delivered back at his brother's home at the end of his ride with Cook around the neighborhood.

On the critical evening of August 8, Cook again asked to talk with defendant and, according to the officer's testimony, defendant voluntarily agreed. Detective Cook made his request, and defendant responded, in Larry Preble's kitchen in the presence of defendant's own brother and sister-in-law. Defendant was never ordered to go with Detective Cook; he was never physically touched or threatened by either officer; he was never confronted by a weapon, a police uniform, a police cruiser, or other symbol of authority; and he during the questioning in the car remained in the neighborhood well known to him. On this evidence the Superior Court's finding that defendant was not detained, within the meaning of *Dunaway,* had a rational basis.

We must note the inherent limitations on an appellate court's role in reviewing findings made by a lower court on the basis of oral testimony. In the case at bar the Superior Court justice heard in person all five actors in the critical incident. It was exclusively for him to resolve any conflicts in their testimony, and he was much better situated than we to appraise the subtle qualities of the circumstances under which defendant went for a ride with the officers in their automobile on the evening of August 8, 1979. We cannot say that his finding was erroneous and, least of all, clearly erroneous.

The entry must be:

Judgment affirmed.

All concurring.