No. 97-724

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 247

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LINDA LOU LAFFERTY,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brad L. Arndorfer; Arndorfer Law Firm, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;

Micheal Wellenstein, Assistant Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney;

Shawn Cosgrove, Deputy County Attorney, Billings, Montana

Submitted on Briefs: September 10, 1998

Decided: October 15, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶ **Linda Lou Lafferty (Lafferty) was charged with, and pled guilty in the Thirteenth Judicial District Court, Yellowstone County, to, the offense of driving under the influence of alcohol (DUI), reserving her right to appeal the court's denial of her motion to suppress all evidence, which was premised on the absence of the requisite particularized suspicion to justify the investigative stop of her vehicle. She raises that issue, and others, on appeal and we reverse and remand with instructions.**

¶ **The dispositive issue is whether the District Court erred in denying Lafferty's motion to suppress on the basis that the investigative stop was based on a particularized suspicion.**

## BACKGROUND

¶ The relevant facts relating to Lafferty's motion to suppress all evidence in her DUI case on the basis that the stop of her vehicle was invalid for lack of particularized suspicion are as follows. In the afternoon hours of April 6, 1996, Montana Highway Patrol Officer Brad Sangray (Sangray) received a dispatcher's report of a drunk driver proceeding eastbound from Park City, Montana. The identity of the caller was not provided and, indeed, it later was ascertained that the caller was anonymous. In any event, the caller merely described the vehicle as a white over blue Ford pickup with a partial license plate of "5-T." The caller provided no further particulars.

¶ Sangray traveled westbound from Billings, Montana, on U.S. Highway 90 and observed a pickup matching the description provided by the dispatcher traveling eastbound. He crossed the median and drove at a high rate of speed until he caught up with the pickup, which had a "5-T" license plate; Sangray then followed the pickup at a distance of six to ten car lengths. While following the pickup for approximately one mile, Sangray saw it cross the fog line on the right side of the highway twice and drive on the fog line once; the tape from the activated video camera in his patrol vehicle confirmed his testimony. The pickup was not speeding. Sangray activated his emergency lights and stopped the pickup, which was being driven by Lafferty, on the basis of the dispatcher's report and the crossing of the fog line, which Sangray testified "is not normal traffic procedure." Sangray also testified that he would not have stopped the pickup absent his independent observations of the pickup crossing the fog line.

¶ Lafferty testified that she noticed Sangray's vehicle as he came up behind her and kept a close eye on it via her rearview and side mirrors. She also testified it was her normal practice to drive close to the fog line on the right side of the road and, indeed, that she was taught to do so in the defensive driving course required for her employment with the government. She did not notice whether she crossed the fog line on the afternoon in question, but testified that she could have done so since she drives right next to it. Lafferty agreed that it would not be safe to make major "swerves" across the fog line and back into the traffic lane, but stated that her vehicle was not "weaving" and that any "swerve" she made over the fog line while looking in her vehicle's mirrors would have been minor. After viewing the video, Lafferty agreed that her pickup did cross the fog line.

¶ **Counsel for Lafferty argued that Lafferty's driving did not constitute a traffic violation and, as a result, the circumstances--that is, the dispatcher's report and Sangray's observation of Lafferty's driving--were insufficient to form the basis for a particularized suspicion that Lafferty was DUI. The State of Montana (State) argued that crossing the fog line constituted "improper lane travel" and, therefore, a violation of the law and that Sangray had a sufficient particularized suspicion to justify an investigative stop.**

¶ **At the close of the hearing on Lafferty's motion to suppress, the District Court denied the motion, subject to the condition that crossing the fog line constitutes a traffic violation, and requested briefs on that legal question. In doing so, the court observed that, in this case:**

> [T]he driving is not something that maybe the ordinary citizen would be particularly concerned about. . . . [B]ut there is something about the manner in which the defendant's vehicle in this case wanders a little over that fog line and back that doesn't look right.
>
> I don't know, maybe the officer could explain it; to me there is something about that that is different than somebody's momentary inattention that wanders across the fog line. . . .

After briefing, the District Court concluded that "[t]he law requires one to stay within one's driving lane until it is ascertained that one can leave one's lane safely." It determined, based on Sangray's observations and its own observation of the video, that Lafferty crossed the fog line and left her lane without first ascertaining that it was safe to do so, thereby justifying Sangray's investigatory stop. On that basis, the District Court denied Lafferty's motion to suppress and Lafferty appeals.

## DISCUSSION

¶ **Did the District Court err in denying Lafferty's motion to suppress on the basis that the investigative stop was based on a particularized suspicion?**

¶ **When circumstances create a particularized suspicion that a person is committing**

an offense, a peace officer may stop the person or the vehicle containing the person to determine whether to arrest the person. Section 46-5-401, MCA. In order to prove the existence of a particularized suspicion sufficient to stop a vehicle, the prosecution must show objective data from which an experienced peace officer can make certain inferences and a resulting suspicion that the occupant of the vehicle is engaged in wrongdoing. State v. Pratt (Mont. 1997), 951 P.2d 37, 40, 54 St.Rep. 1349, 1351 (citation omitted).

¶ Whether a particularized suspicion exists to justify an investigative stop is a question of fact which depends on the totality of the circumstances. *Pratt*, 951 P.2d at 40, 54 St.Rep. at 1351. That is not to say, however, that such a determination cannot also include conclusions of law. Indeed, in this case, it is clear that--in determining that a particularized suspicion existed--the District Court concluded that Lafferty committed a traffic violation by leaving her driving lane without ascertaining that it was safe to do so. We review a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. State v. Lee (1997), 282 Mont. 391, 393, 938 P.2d 637, 639 (citation omitted).

¶ We recently set forth a three-factor analysis for evaluating a citizen informant's information with regard to a possible drunk driver: 1) whether the informant identifies himself or herself to law enforcement; 2) whether the report is based on the personal observation of the informant; and 3) whether the officer's own observations corroborate the informant's information via observation of the illegal activity or finding the person and vehicle substantially as described by the informant. *Pratt*, 951 P.2d at 42-43, 54 St.Rep. at 1353 (citation omitted). When the citizen informant is anonymous and the report lacks foundation for the opinion expressed, the officer must corroborate the tip by observing behavior by the driver--either illegal or indicative of impairment--in order to form the particularized suspicion necessary to justify an investigative stop under § 46-5-401, MCA. *Pratt*, 951 P.2d at 44-45, 54 St. Rep. at 1354.

¶ Applying *Pratt* to the instant case, it is clear that the citizen informant here was anonymous. The informant also did not state any particulars about the driving which formed the basis for the reported opinion that the driver of the pickup was drunk or even that his report was based on personal observation. As a result, Sangray's observation of the described pickup driving in the direction reported did not

constitute sufficient corroboration of the citizen informant's report to form the basis for particularized suspicion; it was necessary for Sangray to personally observe driving that was illegal or indicative of impairment. *See Pratt*, 951 P.2d at 44-45, 54 St.Rep. at 1354.

¶ We turn, then, to the driving observed by Sangray in this case--namely, Lafferty's crossing of the fog line twice and driving on the fog line once--to determine whether that driving was illegal or indicative of impairment. As discussed above, the District Court concluded that crossing the fog line constituted a traffic violation. We disagree.

¶ Section 61-8-328, MCA (1995), states in pertinent part that, when a "roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." According to the State and the District Court, Lafferty violated this statute by crossing the fog line without ascertaining that she could do so safely. In our view, however, the statute relates to moving from a marked traffic lane to another marked traffic lane. Here, Lafferty did not move from one of the marked eastbound traffic lanes on Highway 90 to the other without checking to be sure she could do so safely. She merely crossed onto and barely over the fog line on the far right side of the right traffic lane in which she was traveling. We conclude that this driving was not "illegal" driving under § 61-8-328, MCA (1995), and *Pratt*, and that the District Court's determination to the contrary was erroneous.

¶ The State advances a number of arguments that Lafferty's crossing of the fog line was indicative of impaired driving and, therefore, that the *Pratt* corroboration requirement is met even if no actual traffic violation occurred. First, the State suggests that this driving indicated to Sangray that Lafferty's driving was impaired. The problem with this argument is that Sangray did not testify to that effect; he merely stated that, in his view, her driving was "not normal traffic procedure." While reasonable minds could differ over whether occasionally crossing the fog line is "normal" or at least relatively common driving, not every "nonnormal" kind of driving is necessarily indicative of driving under the influence of alcohol. Sangray did not testify that either his training or his experience led him to infer that a driver whose vehicle crosses the fog line likely is impaired by alcohol.

¶ Nor do the cases on which the State relies support its position that Lafferty's relatively minor crossings of the fog line were sufficient to create a particularized suspicion. In Hulse v. State, Dept. of Justice, 1998 MT 108, ¶ 39, 961 P.2d 75, ¶ 39, 55 St.Rep. 415, ¶ 39, we properly determined that erratic driving--that is, "driving all over the road, crossing the center line and the fog line, weaving in and out of traffic, or braking for green lights"--can constitute the basis for a particularized suspicion to stop the driver. Here, however, the State's repeated characterizations of Lafferty's driving as "swerving" and "weaving" notwithstanding, Lafferty was not driving erratically or all over the road or crossing the center line *and* the fog line or weaving in and out of traffic.

¶ Matter of Suspension of Driver's License of Blake (1986), 220 Mont. 27, 712 P.2d 1338, also is distinguishable. There, the undisputed evidence was that petitioner was driving in the vicinity of several bars around closing time and swerved into the wrong traffic lane.

We observed that the driving of a vehicle into the wrong traffic lane may be sufficient to constitute a traffic violation under § 61-8-321, MCA, and that the evidence as a whole--that is, swerving into the wrong traffic lane around 2:00 a.m., in the vicinity of several bars--was sufficient to constitute a particularized suspicion that he may have been driving under the influence of alcohol. *Blake*, 220 Mont. at 31, 712 P.2d at 1341. In the present case, the time, location and driving were substantially different. Lafferty was stopped at approximately 4:30 in the afternoon on an interstate highway; she did not swerve into the wrong traffic lane, but merely crossed the fog line as she observed Sangray's patrol car come up behind her at a high rate of speed and follow her. Thus, the circumstances of this case do not rise to the particularized suspicion we determined existed in *Blake*.

¶ We concluded above that the District Court erred in determining that a traffic violation had occurred. We further conclude that, under the totality of the circumstances, as applied to this case, Sangray did not have facts supporting a particularized suspicion that Lafferty was committing an offense and, therefore, the District Court erred in concluding that the investigative stop of her pickup was justified under § 46-5-401, MCA.

¶ Reversed and remanded with instructions to enter an order of dismissal.

/S/ KARLA M. GRAY

We concur:


/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART