DA 07-0740

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 369

STATE OF MONTANA
(CITY OF GREAT FALLS),

        Plaintiff and Appellee,

  v.

KIMBRLI LAVON ROSS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DC 06-536
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Kristi Blazer, Missouri River Law Office; Craig, Montana

        For Appellee:

        Hon. Mike McGrath, Montana Attorney General; Jonathan M. Krauss, Assistant Attorney General; Helena, Montana

        Brant S. Light, Cascade County Attorney; Great Falls, Montana

        Chad G. Parker, City Attorney; Great Falls, Montana

Submitted on Briefs:  September 3, 2008

Decided:  November 10, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Kimbrli Lavon Ross ("Ross") pled guilty in Great Falls Municipal Court to a second offense of driving under the influence of alcohol ("DUI"). Under the terms of the plea agreement, Ross reserved the right to appeal the Municipal Court's denial of her motion to suppress DUI evidence on the basis that the arresting officer did not have a particularized suspicion for an investigatory stop of Ross's vehicle. The Eighth Judicial District Court, Cascade County, affirmed the order of the Municipal Court. Ross appeals. We affirm.

¶2 The restated issue on appeal is whether the District Court erred in affirming the Municipal Court's determination that the arresting officer had a particularized suspicion to justify the investigatory stop of Ross's vehicle?

**STANDARD OF REVIEW**

¶3 We review a district court's denial of a motion to suppress evidence to determine whether the district court's finding that the officer had particularized suspicion to justify the investigatory stop is clearly erroneous and whether its conclusions of law are correct. *State v. Loiselle*, 2001 MT 174, ¶ 6, 306 Mont. 166, ¶ 6, 30 P.3d 1097, ¶ 6. A finding is clearly erroneous if it is not supported by substantial evidence, the court has clearly misapprehended the effect of the evidence, or this Court is left with a definite and firm conviction that the district court made a mistake. *State v. Gilder*, 1999 MT 207, ¶ 7, 295 Mont. 483, ¶ 7, 985 P.2d 147, ¶ 7.

## BACKGROUND

¶4 On February 21, 2006, at approximately 7:40 p.m., Great Falls Police Officer Steven Scheer ("Officer Scheer") made an investigatory stop of Ross's vehicle on First Avenue North at the intersection of Seventeenth Street North in Great Falls, Montana. After further investigation, Officer Scheer cited Ross for careless driving in violation of § 61-8-302(1), MCA, open container in violation of § 61-8-460, and DUI, second offense, in violation of § 61-8-401, MCA. Ross appeared in Municipal Court in Great Falls and filed a motion to suppress evidence obtained after the investigatory stop on the basis that Officer Scheer lacked a sufficient particularized suspicion for the stop. After the Municipal Court denied the motion, Ross pled guilty and reserved her right to appeal the denial of her motion to suppress. All charges, except for the DUI charge, were dropped. Ross was ordered to pay $300 in fines and was sentenced to six months in the Cascade County Detention Center with all but 30 days suspended.

¶5 The circumstances leading up to the investigatory stop were presented during the hearing before the Municipal Court. At the hearing, Officer Scheer testified that he observed Ross's vehicle, a GMC Yukon, turn out of an alley from the 1400 block of Sixth Avenue onto Fifteenth Street. After turning onto Fifteenth Street, a two-lane, one-way street, Officer Scheer stated that he then observed the vehicle switch from the west lane to the east lane of travel. Officer Scheer then followed the vehicle and observed it swerve within the lane of traffic. Officer Scheer also testified that he observed the vehicle cross the dividing line between the lanes, but stated that it was "[p]robably minimal inches perhaps." He also testified that he "observed the vehicle swerve within

3

its lane touching both the dividing line and the fog line at certain points which is suspicious driving behavior." Officer Scheer's dash-mounted video camera recorded these maneuvers, which were shown during the hearing in the Municipal Court.

¶6 In addition, Officer Scheer observed the vehicle travel appropriately through a green light at Central Avenue and stop properly for a red light at the intersection of Fifteenth Street and First Avenue North. Officer Scheer then testified that he observed the vehicle signal and make a right turn onto First Avenue North. While making the turn, according to Officer Scheer, the vehicle's passenger side tires rubbed against the curb, causing it to rock back and forth. Officer Scheer's video camera did not capture the turn, which he said was due to the fact that, unlike his eyes, the dash-mounted camera is unable to see around corners. After witnessing Ross's vehicle make the turn, Officer Scheer activated the lights on his patrol car and proceeded to stop Ross's vehicle.

¶7 At the hearing on the motion to suppress the evidence obtained after the stop, Ross provided an explanation for the swerving witnessed by Officer Scheer, stating that she was trying to avoid manhole covers because "it makes your vehicle bounce . . ." She also stated, with regard to the manhole covers, that she typically tries to avoid them "[b]ecause its [sic] very bumpy with my vehicle and it makes it you know kind of swerve so I don't like hitting them." When asked on cross-examination whether her swerving was possibly due to her driving under the influence of alcohol, Ross stated that it was not and that, while she had been drinking at a friend's house, she "did not think [she] was intoxicated." Officer Scheer, however, testified that he did not have to avoid any

4

manhole covers and that the careless driving ticket was based upon the swerving and the rubbing of the wheels.

¶8 After reviewing the video from Officer Scheer's patrol camera and listening to the testimony from Officer Scheer and Ross, the Municipal Court concluded that Officer Scheer had a particularized suspicion to stop Ross's vehicle and that Ross's explanation for the swerving (avoiding manhole covers) was not at issue in the case. Instead, the court stated that the issue was "whether that driving behavior could be construed to be sufficiently suspicious for an experienced officer to make the stop." On appeal, the District Court concluded that the Municipal Court's findings of fact were not clearly erroneous and that its "resulting conclusion of law that Officer Scheer conducted a lawful investigatory stop of Ross, ultimately resulting in a DUI arrest, [was] correct."

**DISCUSSION**

¶9 The Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons against unreasonable searches and seizures, including brief investigatory stops of vehicles. *Loiselle*, ¶ 7 (*citing State v. Farabee*, 2000 MT 265, ¶ 14, 302 Mont. 29, ¶ 14, 22 P.3d 175, ¶ 14). We have stated that "to make an investigatory stop, an officer must have a particularized and objective basis for suspecting the particular person of criminal activity." *Loiselle*, ¶ 7. In *State v. Gopher*, 193 Mont. 189, 631 P.2d 293 (1981), we adopted the two-part test articulated by the United States Supreme Court in *U.S. v. Cortez*, 449 U.S. 411, 101 S. Ct. 690 (1981), to determine whether a police officer had a particularized suspicion to make an investigatory stop. In *Gopher*, we held that in order to demonstrate the existence of a

5

particularized suspicion, the State must show: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity." 193 Mont. at 194, 631 P.2d at 296; *see also* § 45-5-401(1), MCA (codifying the rule requiring particularized suspicion for investigatory stops). Finally, "whether a particularized suspicion for an investigatory stop exists is a question of fact which depends on the totality of the circumstances." *State v. Lafferty*, 1998 MT 247, ¶ 10, 291 Mont. 157, ¶ 10, 967 P.2d 363, ¶ 10.

¶10 Ross argues that Officer Scheer did not have a sufficient particularized suspicion to justify the investigatory stop of her vehicle on the night of February 21, 2006. Specifically, Ross claims that "the only driving behavior supporting particularized suspicion was weaving within a lane of traffic and crossing the line once by 'inches perhaps.'" Ross also argues that the additional "driving behaviors" (the immediate lane change and the turn onto First Avenue North that caused Ross's tires to rub the curb) cited by the City were not found credible by the Municipal Court, and that the resulting swerving behavior was insufficient to establish a particularized suspicion of wrongdoing. Finally, Ross argues that the Municipal Court erred by relying "strictly on deviations from a straight line of travel" in finding a particularized suspicion, and that the District Court, in affirming the Municipal Court's determination, erred by not restricting its review to whether the Municipal Court's findings of fact were clearly erroneous.

¶11 The State, on the other hand, contends that the District Court correctly affirmed the Municipal Court's denial of Ross's motion to suppress. According to the State, the

6

totality of the circumstances in this case established objective data from which Officer Scheer could make certain inferences and a resulting suspicion of wrongdoing sufficient to justify an investigatory stop of Ross's vehicle. Specifically, the State argues that "given Officer Scheer's undisputed experience in traffic and DUI stops, and his specific, objective, and articulable observations, Ross's undeniable weaving or swerving gave rise to a reasonable suspicion of both careless driving and potential DUI."

¶12 Ross cites this Court's decisions in *Lafferty* and *Morris v. State*, 2001 MT 13, 304 Mont. 114, 18 P.3d 1003, for the proposition that "driving on and over traffic lines" is insufficient particularized suspicion to justify an investigatory stop. Ross argues that *Lafferty* and *Morris* provide "clear guidance about the level of deviation from 'perfect' driving which is required to justify a stop." The State, however, distinguishes the circumstances of this case from *Lafferty* and *Morris* by alleging that a finding of particularized suspicion failed in those cases "not because the deviations were minor, but because the 'minor' driving deviations observed did not raise suspicion of either a traffic infraction or DUI."

¶13 In *Lafferty*, the officer received an anonymous tip about a possible drunk driver. After identifying and following the vehicle for approximately one mile, the officer observed the vehicle "cross the fog line on the right side of the highway twice and drive on the fog line once . . . ." On appeal, we stated that the officer, without other relevant circumstances, "did not have facts supporting a particularized suspicion that Lafferty was committing an offense . . . ." In *Morris*, the officer witnessed a "vehicle 'drift' across the painted line separating the eastbound lanes of traffic, and then 'drift' and touch the fog

line on the other side of the lane one or two times." Based on this evidence alone, the officer initiated an investigatory stop of the vehicle. On appeal, we noted that the officer in *Morris* did not cite the driver of the vehicle with an offense other than DUI and held that the circumstances were insufficient to form a sufficient particularized suspicion to justify the stop.

¶14    However, in Ross's case, there are additional facts which distinguish it from our holdings in *Lafferty* and *Morris*. Officer Scheer testified that he "observed the vehicle swerve within its lane touching both the dividing line and the fog line . . . ." Officer Scheer also provided testimony that he observed the vehicle cross the dividing line. Further, Officer Scheer stated that he believed Ross's driving was "suspicious driving behavior," and that when Ross "made the right hand turn onto 1st Avenue North her wheels struck the curb," which resulted in Officer Scheer stopping the vehicle. Finally, Officer Scheer stated that he believed "there was something distracting her driving ability" and that he normally would have stopped someone exhibiting similar driving behaviors. Finally, Officer Scheer testified that "[Ross] displayed common driving of people [he has] arrested for driving under the influence."

¶15    In its findings, the Municipal Court stated that "[a] viewing of the police car videotape shows that the defendant's vehicle drifted to the right and corrected itself in a pronounced weaving maneuver on at least two occasions and weaved within the lane to a lesser extent on two other occasions." In addition, the Municipal Court found that Officer Scheer had "made approximately 32 DUI arrests during the last year and that the swerving behavior that the defendant exhibited on the video was the type of behavior that

he had observed in previous DUI stops. The Municipal Court also found that Officer Scheer cited Ross "for careless driving for swerving" and that "[a]fter further investigation the officer also issued the defendant a ticket for driving under the influence of alcohol." Based on these findings, the Municipal Court concluded that Ross's driving behavior was sufficiently suspicious for an experienced officer such as Officer Scheer to make the investigatory stop.

¶16 Despite Ross's claim that the Municipal Court rejected evidence from Officer Scheer that Ross's tires hit the curb as it completed the turn onto First Avenue North, there is no evidence to support this contention. The Municipal Court stated the following in its findings of fact:

> The officer also testified that the defendant cut the corner at 15th Street and First Ave N. causing her tires to rub against the curb; the defendant disputed that testimony and the videotape did not show the maneuver.

Contrary to Ross's interpretation, the fact that the court recognized that the videotape did not show the bumping of the curb does not mean that the court thereby rejected the officer's testimony that Ross's tires rubbed the curb. Read in context, it is clear that the court accepted Officer Scheer's testimony on this point. We do note that it would facilitate review of decisions if courts, in their fact finding would make declarative findings of fact, instead of merely reciting what a witness said. Such declarations of fact should, of course, be based upon testimony or evidence before the court.

## CONCLUSION

¶17 The Municipal Court's finding that Officer Scheer had sufficient facts to create a particularized suspicion to justify the investigatory stop of Ross's vehicle, which the

9

District Court affirmed, was not clearly erroneous and its conclusions of law were correct. Therefore, we affirm the order of the District Court, denying Ross's motion to suppress evidence arising from the investigatory stop.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER