FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0607

DA 14-0607

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 179N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID FRANZ COOK,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-13-182
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          David M. Maldonado, Stevenson Law Office, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

          William E. Fulbright, Ravalli County Attorney, Meghann Paddock, Deputy
County Attorney, Hamilton, Montana

Submitted on Briefs:  May 27, 2015
Decided:  June 30, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 David Franz Cook appeals from the denial of his motion to suppress in the Twenty-First Judicial District Court, Ravalli County. We affirm.

¶3 Cook argues there were insufficient facts to support a finding of particularized suspicion for his traffic stop, and therefore all evidence from that stop should be suppressed.

¶4 On Sunday, August 25, 2013, at approximately 1:20 a.m., Officer Shawn Williams was patrolling in Hamilton. During or immediately after completing a left turn onto First Street, heading northbound, Williams saw a vehicle approaching him in the southbound lane. Williams observed the vehicle drift across the solid yellow line, into the turning lane, and then drift back into the driving lane. Williams made a U-turn to follow the vehicle. While following the vehicle, Williams saw the vehicle weave from side to side within its lane and observed the vehicle drive onto the solid yellow line. Based on these observations-the vehicle crossing the solid yellow line into the turning lane, the vehicle weaving within its lane, and the vehicle driving on the solid yellow line, Williams activated his emergency lights and initiated a traffic stop. Following further investigation and a standard field sobriety test, Cook was charged with felony DUI and misdemeanor traffic offenses including improper lane change.

¶5    Cook requested an evidentiary hearing for the purpose of reviewing the facts supporting Williams's stop.  At the hearing, Williams testified that as of March 2014, he had been a Hamilton police officer for a year and a half, and his primary duty is patrolling traffic. His training included a 40-hour course in DUI investigation and apprehension and a 14-hour Advanced Roadside Impaired Driving Enforcement course related to DUI and drug cases. Williams also testified that he is familiar with the NHTSA manual and its DUI impairment cues, which he references regularly.  Based on his experience, Williams also testified that there are typically a lot of DUI drivers on the road at that time of night.

¶6    Williams's patrol car's onboard video recorded Cook's vehicle from the time Williams turned left onto First Street until Williams made his U-turn.  The video footage did not capture Cook's vehicle before the left turn or during the U-turn.  After Williams completed the U-turn, Cook's vehicle was visible in the video until the end of the recording. Williams testified that the glare from the vehicle's headlights and the low quality of the video make it difficult to discern when or if Cook's vehicle crossed the solid yellow line into the turning lane.  However, Williams testified that what he sees with his naked eye is better than what he can see in the video footage.

¶7    The defense called Garrick F. Mitchell, an accident reconstructionist specializing in photogrammetry, the science of obtaining measurements from photographs.  Mitchell's testimony and report opined that, in the video, Cook's vehicle did not cross over the solid yellow line.  Mitchell based this opinion on reviewing the video evidence, taking and reviewing still photos obtained from the video, comparing the video and photos to Williams's affidavit, and applying photogrammetry to the video evidence.

3

¶8     After viewing the video, the District Court could not determine if the vehicle crossed over the yellow line during the time the vehicle was visible in the video. The District Court did determine that Cook's vehicle appeared to slowly drift from the yellow line towards the center of its lane of travel as it approached Williams. The District Court also found that Cook's vehicle could be observed gently drifting from left to right within its lane. The District Court found the wheels of the vehicle touched the yellow line just before the traffic stop.

¶9     This Court reviews the grant or denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether the district court correctly interpreted and applied the law to those facts. *State v. Wagner*, 2013 MT 159, ¶ 9, 370 Mont. 381, 303 P.3d 285. A district court's determination that particularized suspicion exists is a question of fact, which this Court reviews for clear error. *State v. Gill*, 2012 MT 36, ¶ 10, 364 Mont. 182, 272 P.3d 60. This Court does not reweigh evidence or substitute its evaluation of the evidence for that of the district court. *Wagner*, ¶ 15. The trial court is in the best position to evaluate the credibility of witnesses with the benefit of live testimony, to become familiar with the details of the case and to weigh the value of evidence. *State v. Kaufman*, 2002 MT 294, ¶ 12, 313 Mont. 1, 59 P.3d 1166.

¶10    Both the United States Constitution and the Montana Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. These protections apply to brief investigative stops of vehicles. *State v. Ross*, 2008 MT 369, ¶ 9, 346 Mont. 460, 197 P.3d 937. Montana law provides that an officer "may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that

4

the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA; *State v. Flynn*, 2011 MT 48, ¶ 7, 359 Mont. 376, 251 P.3d 143. The State must prove the existence of particularized suspicion by showing the officer had: (1) objective data and articulable facts from which he or she could make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *Flynn*, ¶ 7. Further, particularized suspicion does not require certainty on the part of the investigating officer. *State v. Larson*, 2010 MT 236, ¶ 19, 358 Mont. 156, 243 P.3d 1130. If an officer does not have particularized suspicion to effect a stop, the stop is unlawful, and any evidence gained from the stop must be excluded. *State v. Pearson*, 217 Mont. 363, 366, 704 P.2d 1056, 1058 (1985).

¶11 Cook, relying on Mitchell's report and testimony, takes issue only with the observation that he crossed the yellow line during the time the vehicle was visible on video. Without this observation, Cook argues, Williams did not have enough facts to find particularized suspicion. Williams testified, however, that he observed Cook's vehicle for six seconds before the vehicle appeared on camera. While Williams's affidavit states that he observed the vehicle crossing the yellow line as he was heading north on First Street, he clarified at the hearing that he could not recall if the observation was while he was making the turn or directly after. The District Court found this variation to be insignificant when assessing Williams's credibility. The District Court also found Williams's testimony was not in conflict with Mitchell's opinion, because Cook's vehicle may have crossed the yellow line before it was on camera. These assessments of the credibility and weight to be given the

testimony of witnesses are within the realm of the District Court, and we will not disturb its findings on appeal. *Kaufman*, ¶ 12.

¶12     A traffic violation alone is sufficient to give rise to particularized suspicion. Section 46-5-401(1), MCA; § 61-8-328(2), MCA. The observation of the vehicle crossing the yellow line alone was enough to support particularized suspicion. In *Flynn*, we concluded sufficient facts existed to support a finding of particularized suspicion when the arresting officer observed the defendant's vehicle cross the fog line three times where both right-side tires were driving on the shoulder of the highway. *Flynn*, ¶ 4. The officer's observations in *Flynn* took place at 1:30 a.m., and the officer was on alert for DUI because of the proximity to the bar closing times. *Flynn,* ¶¶ 3-4,14. Here, like in *Flynn*, Williams observed the defendant crossing a road line and considered the time of night. Additionally, Williams saw the vehicle travel in a weaving pattern and observed its tires touch the lane line a second time. These facts allowed Williams to make a reasonable inference that the driver of the vehicle may be impaired by alcohol.

¶13     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly erroneous and its interpretation and application of the law were correct.

¶14     Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA