STATE OF MAINE                          UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                         PORTLAND
                                        CUMDC-CR-15-4619


**STATE OF MAINE**          )
                            )
                            )
v.                          )          **MOTION TO SUPPRESS**
                            )
**MICHAEL LEONARD**         )
                            )


    **NOW COMES** Defendant, Mr. Michael Leonard, by and through counsel Devens M. Hamlen of The H&H LawCenter, and requests that this Honorable Court suppress all evidence arrising from the illegal seizure on May 15, 2015 as it was obtained in violation of Article 1 section 5 of the Maine State Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.


    As grounds for this Motion, Mr. Leonard respectfully states:


## FACTS


1.     The State had charged Mr. Leonard with one Class D Misdemeanor of Operating Under the Influence and one Class E Misdemeanor of Improper Plates.

2.     Unless otherwise indicated, according to reports from Cumberland County Sheriff's Deputy Nicholas Mangino as well as discovery provided by the State, the following events occurred on May 15, 2015:

3.     At approximately 12:45 in the morning Deputy Mangino was on patrol. As Deputy Mangino drove north on Route 35, he came upon a tan sedan driving north.


1

4. While Deputy Mangino drove behind the car, he saw the vehicle cross the yellow line two times. He also saw the car touch the white fog line twice. The second time the car touched the fog line, it traveled on the fog line for a short distance.

5. Deputy Mangino turned on his blue lights and pulled the car over. The driver was later identified as Michael Leonard. After conducting some field sobriety tests and making a few other observations, Deputy Mangino arrested Mr. Leonard for Operating Under the Influence.

## LEGAL ARGUMENT

6. Part I, Article 5 of the Maine Constitution provides that "[t]he people shall be secure in their houses, papers, and possessions from all unreasonable searches and seizures." Part 1, Article 5 of the Maine Constitution as well as 4th Amendment of the United States Constitution are implicated when a seizure occurs. State v. Cilley, 1998 ME 34 at ¶ 5.

7. "A seizure of the person occurs when 'the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen' such that he is not free to walk away." State v. Preble, 430 A.2d 553, 555 (Me.1981) (quoting U.S. v. Viegas, 639 F.2d 42, 44 (1st Cir.1981)); see also, U.S. v. Mendenhall, 446 U.S. 544 (1980) (holding that a when a reasonable person feels as if they are not free to leave, a seizure occurs). This is an objective standard and the subjective belief of the officer is not relevant. Id. at 555 n.6.

8. A warrantless seizure is per se unreasonable unless it is accompanied by an objective reasonable articulable suspicion that criminal conduct has occurred or is about to occur. State v. Whitney, 2012 ME 105; State v. Langlois, 2005 ME 3.

9. An investigatory stop is a valid exception to the warrant requirement only if two conditions are met, first "the officer must in fact have had an articulable suspicion of criminal

2

conduct" and second "the officer's suspicion must be objectively reasonable in the totality of the circumstances." State v. Carnevale, 598 A.2d 746, 748 (Me. 1991). A mere hunch is not enough. "The officer's inarticulate hunch cannot be converted into a 'reasonable suspicion' by second thoughts developed at the suppression hearing." State v. Chapman, 494 A.2d 314, 317 (Me. 1995). The police must possess actual suspicion and "[a] finding that a reasonable person could have had a reasonable suspicion on the given facts is not alone enough." Id.

10.    Deputy Mangino did not possess reasonable articulable suspicion when he seized Mr. Leonard. The reasons that Deputy gave for the seizure, crossing the yellow line twice and touching the fog line, do not add up to reasonable articulable suspicion that criminal activity was afoot.

11.    In stating that "[a] vehicle must be operated as nearly as practical entirely within a single lane" the legislature has recognized that incidental lane violations are mistakes made by all drivers from time to time. 29-A M.R.S.A § 2051 (1). Likewise, courts across the country have recognized that these types of incidental violations alone are not a sufficient basis to stop a vehicle. See e.g., State v. Tague, 74 CrL 391 (Iowa 2004) (observation that tires barely crossed the left edge line held insufficient to justify stop on suspicion of lane control violation or impaired driving, and not justifiable under community caretaking exception); U.S. v. Colin, 314 F. 3d 439 (9th Cir. 2002) (drift onto fog line for 10 seconds then a drift to the left traveling on yellow line for 10 seconds did not give officer probable cause to stop); U.S. v. Saldana, 55 Fed. Appx. 424 (2003); Rowe v. State, 769 A.2d 879, 69 CrL 89 (Md. 2001) (Brief crossings of a road's right edge-line did not provide probable cause to stop a driver for violating the single-lane law, Md. Code Section 21-309(b)); Frasier v. Driver, 172 Ore. App. (2001) (lane travel statute requires more for a violation than a momentary crossing or touching of an edge or lane line);

3

U.S. v. Gregory, 79 F. 3d 973 (10th Cir. 1996) (an isolated incident of crossing two feet into the emergency lane on an interstate was not a violation); Sledge v. State, 239 Ga. App. 301 (1999) (upholding traffic stop under the lane travel statute where involved changing lanes without signaling, straddling lanes); Crooks v. State, 710 So.2d 1041 (Fla. App. 1998); Hernandez v. State, 983 S.W.2d 867 (Tex. App. 1998); Maddox v. State, 227 Ga. App 602 (1997) (upholding traffic stop where driving involved weaving across lanes of traffic onto the shoulder); State v. Cerny, 28 S.W. 3d 796 (Tex. App. 2000); State v. Tarvin, 972 S.W. 2d 910 (Tex. App. 1998) (there must be more than mere touching or going over a fog line; there must be an indication of erratic or unsafe driving); State v. Lafferty, 291 Mont. 157, 967 P.2d 363 (1998) (touching or crossing fog line does not justify a stop unless vehicle operated erratically); State v. Caron, 534 A.2d 978 (Me. 1987) (stop may not be based on several brief, incidental lane violations that did not present a traffic safety issue); U.S. v Smith, 799 F. 2d 704 (11th Cir. 1986) (crossing fog line by six inches not grounds for stop)

12. Because the purpose of lane control statutes is vehicle safety, "[a] vehicle's brief, one time straddling of the center line of an undivided highway is a common occurrence and, in the absence of oncoming or passing traffic, without erratic operation or other unusual circumstances, does not justify an intrusive stop by a police officer." Caron, 534 A.2d at 979.

13. In the present case, Deputy Mangino only reports two actual lane violations. Deputy Mangino did not report any oncoming traffic or other potential safety issues with Mr. Leonard's driving. See generally, Id.; State v. Lafferty, 291 Mont. 157, 967 P.2d 363 (1998); State v. Tarvin, 972 S.W. 2d 910 (Tex. App. 1998). What is more, portions of Route 35 contain significant potholes and other road damage. It would be incumbent on a driver, in the interest of safety, to drive in a way as to avoid the potholes and other damage. 23 M.R.S.A Chap. 313.

4

14.    Indeed there is even a law that governs municipalities' responsibility with respect to potholes. 23 M.R.S.A Chap. 313. As described on the State of Maine's website:

> In Maine law under 23 MRSA, Chapter 313, which covers local highway law, it says *"Highways, town ways and streets legally established shall be opened and kept in repair so as to be safe and convenient for travelers with motor vehicles."* This law is commonly called the "pothole law" or the "24 hour law" by many Mainers. The interpretation of this can be quite broad. It is referenced when someone claims their vehicle was damaged because of a pothole or similar road defect such as a defective culvert, or muddy road, or a "deadly fixed object" (DFO) such as heavy mailbox posts or other solid objects in the town right-of-way.

http://www.maine.gov/mdot/csd/mlrc/technical/legal/defectlaw.htm. (original emphasis).

15.    Given that the overall focus of 29-A M.R.S.A § 2051 is driver safety and 23 M.R.S.A Chap. 313 strongly suggests it would be unsafe to travel through rough roads and potholes, Mr. Leonard's minor, incidental lane violations does not rise to the level of reasonable articulable suspicion that he committed a crime.

## CONLCUSION

16.    Because the police unlawfully seized Mr. Leonard, the fruit of the poisonous tree doctrine requires the exclusion from trial of evidence derivatively obtained through the violation of Mr. Leonard's constitutional rights. Segura v. U.S. 468 U.S. 796, 804 (1984). In this case, all evidence obtained by the police was obtained as a result of the illegal seizure of Mr. Leonard.

**WHEREFORE**, the defendant, Ms. Michael Leonard respectfully requests that this Court:

    A) Suppress any evidence the police illegally obtained through their illegal seizure and warrantless search;

    B) Hold a hearing and hear evidence on this Motion;

    C) Issue a written order of facts and law; and

5

D) Grant such further relief as serves justice.

Respectfully Submitted,

Dated: 3/21/16

Devens M. Hamlen, Esq.
Maine Bar No.: 9973
Attorney for the Defendant

H&H LawCenter, P.A.
22 Monument Sq., Suite 404
PO Box 4784
Portland, ME 04112
207.221.6363
mheminway@hhlawcenter.com

## CERTIFICATE OF SERVICE

I, Devens M. Hamlen, do hereby certify that on this date, I have delivered a copy of the foregoing attached Motion to Suppress to:

Cumberland County District Attorney's Office
142 Federal Street
Portland, ME 04101

Dated: 3/21/16

Devens M. Hamlen, Esq.
Maine Bar No.: 9973

6

STATE OF MAINE
CUMBERLAND, ss

UNIFORM CRIMINAL DOCKET
DOCKET NO. CR-15-4619

STATE OF MAINE
Cumberland, SS. Clerk's Office

MAR 1 8 2016

RECEIVED

STATE OF MAINE

v.                                          ORDER ON MOTION TO SUPPRESS

MIKE A. LEONARD

Mike Leonard ("Leonard") filed a motion to suppress, raising a single issue derived from the stop of his vehicle by Deputy Patrolman Nicholas Mangino ("Deputy" or "Mangino") of the Cumberland County Sheriff's Office. Leonard contends that the stop was not justified by an objectively reasonable suspicion of criminal conduct: Leonard claims that he was just trying to maneuver his car so that he could avoid potholes and cracks on Route 35 in Naples. Leonard does not deny that he may have drove onto or crossed the yellow line or white fog line in the roadway.

On May 15, 2015 at 12:45 am, Deputy Mangino patrolled Route 35 in Naples. He observed a tan vehicle cross the yellow center line two times and "cross onto the white fog line with passenger side tires two times," and on the second cross onto the fog line, he continued for a short time over the fog line before moving back into the travel lane. Mangino stopped Leonard's vehicle for these four line violations. Mangino does not recall whether Leonard crossed a single or double yellow line or how long Leonard traveled on the yellow or fog lines, or how far over the fog lines Leonard traveled. He did not observe any notable eradicate driving. The cruiser did not have a cam recorder. Mangino does not remember where he pulled Leonard over on Route 35. Deputy Mangino also does not remember any obstructions on the road, but he does remember

that he did not have to maneuver his vehicle to avoid any obstructions in the road. The court finds Mangino's testimony at the suppression hearing credible.

Leonard testified that he was driving that night, taking his friends home following a dart tournament. They stopped over at Brays Pub since this was the end of a twelve-week tournament and they would not see each other again until the fall. Leonard had just bought his car. He states, he was driving safely to avoid the potholes. He was trying to follow the road, but it was extremely bumpy with potholes and cracks. Leonard admitted that he drove on the fog line and yellow lines to avoid holes in the road. The court finds that Leonard's testimony was not specific and detailed enough for the court to find him credible.

## DISCUSSION

"A stop is justified when an officer's assessment of the existence of specific and articulable facts indicating a possible violation of law or a public safety risk is objectively reasonable considering the totality of the circumstances." *State v. Simmons*, 2016 ME 49, ¶ 8 (quoting *State v. Connor*, 2009 ME 91, ¶10, 997 A. 2d 1003). "[T]he threshold for demonstrating an objectively reasonable suspicion necessary to justify a vehicle stop is low . . . The suspicion need only be more than a speculation or an unsubstantiated hunch." *Id.* (quoting *State v. LaForge*, 2012 ME 65, ¶10, 43 A. 3d 961). Defendant contends

Deputy Mangino had reasonable articulable suspicion that Leonard's driving on the yellow and fog lines at 12:45 a.m. supported a conclusion that either the driver was impaired, committed a traffic violation, or created a safety issue. "A vehicle must be operated as nearly as practical entirely within a single lane." 29-A M.R.S. § 2051(1).

2

Violation of a traffic infraction witnessed by a law enforcement officer is sufficient justification for the stop of a vehicle. *See State v. Webber*, 2000 ME 168, ¶7, 759 A.2d 724. Although this is not the strongest case, it contains more factual circumstances than in *State v. Caron*, 534 A.2d 978, 979 (Me. 1987), where a brief straddling of the centerline, without other indicia, did not support the officer's subjective suspicion that defendant was either intoxicated or asleep. Defendant argues that these types of incidental lane violations are mistakes made by drivers from time to time and courts across the country have found these incidental violations alone are not a sufficient basis to stop a vehicle. Citing cases across the country and quoting *Caron* does not support defendant's argument.

In analyzing whether Mangion's observations satisfy constitutional standards for stopping Leonard's vehicle, "there is no mechanical standard for reviewing a court's conclusions on whether an officer's suspicion was objectively reasonable." *Porter*, 2008 ME 175, ¶9, 960 A.2d 321. The Law Court stated, there is no precise number of line touchings or crossings by a vehicle operator that delineates a constitutionally justified stop from an unjustified one." The threshold is low: it "is considerable less than proof of wrongdoing by a preponderance of the evidence," *Id.* at ¶9, and "need not arise to the level of probable cause." *State v. Sylvain*, 2004 ME 5, ¶17, 814 A.2d 984. Application of the Law Court's standard "properly balances the driver's right to be free from excessive restraint by the State against the public's right not to be placed at risk by an impaired driver." *Porter*, 2008 ME 175, ¶9 (quotation marks and citations omitted). Reviewing similar factual situations, the Law Court upheld the stop in *State v. Pelletier*, 541 A. 2d 1296, 1296-97 (Me.1988) (The officer followed defendant's vehicle for four to five miles

3

and stopped it after observing the vehicle cross the centerline three times and drift onto the shoulder once over the distance.); *Porter*, 2008 ME 175, ¶¶2-3, 12 (Within a quarter of a mile, the defendant drove onto the fog line, then over the centerline by a foot, and then onto the center and fog lines again.); *State v. LaForge*, 2012 ME 65, 43 A.3d 961 (The officer saw defendant drive onto the centerline twice, then later completely cross the fog line with his passenger-side tires twice, and then completely cross the centerline with his driver-side tires twice more.) In each of these case, the officers' observations gave rise to an objectively reasonable suspicion of impaired driving. In each case, there was more than bare speculation or an unsubstantiated hunch. Here the circumstances, including the early morning hour of the stop, and the failure to stay within a single lane and crossing twice onto the centerline and the fog lines justify a stopped based on reasonable articulable suspicion.[1]

Deputy Mangino's suspicion was objectively reasonable and therefore the stop of Leonard's vehicle was reasonable under the Fourth Amendment. *See State v. Porter*, 2008 ME 175, ¶¶8, 11-12, 960 A.2d 321.

The entry is:

Motion to Suppress is DENIED.

Date: May 17, 2016

Joyce A. Wheeler, ARJ
Maine Superior Court

---

[1] As argued by the State, the Deputy's articulated reason for stopping Mangino may also support a finding that the Deputy was motivated by a public safety concern, in light of the time of the stop and the failure to stay within a single lane. Safety reasons alone can justify a stop if based on specific and articulable facts. *See State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989).

4