

DA 08-0555

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 327

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHN DIXON CLARK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 08-241
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jennifer C. Kaleczyc, Assistant Public Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana

          Leo Gallagher, Lewis and Clark County Attorney; Melissa Broch, Deputy County Attorney, Helena, Montana

                    Submitted on Briefs:  September 3, 2009

                              Decided:  October 13, 2009

Filed:

             _____
                            Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     John Dixon Clark (Clark) appeals from an order of the First Judicial District Court, Lewis and Clark County, denying his motion to dismiss and suppress evidence. Clark argues that the game wardens who arrested him lacked particularized suspicion to stop his vehicle after he drove by a game checking station. We affirm.

¶2     We review the following issue on appeal:

¶3     *Did the game wardens have particularized suspicion to stop Clark's truck for a possible fish and game violation?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     The Department of Fish, Wildlife and Parks (FWP) set up a game checking station on Highway 200 in Lewis and Clark County on October 14, 2007. Section 87-1-207, MCA, authorizes game checking stations for the purpose of allowing FWP officers to inspect the licenses and game possessed by hunters and fishermen in Montana. All hunters and fishermen traveling in the direction where the station is located must stop. Section 87-1-208, MCA. Game checking stations generally use a "spotter" to identify vehicles likely to contain hunters or fishermen. The spotter calls ahead to the checkpoint. Wardens pull over the identified vehicles if the drivers fail to stop at the checkpoint to determine whether they have committed a fish and game violation. Warden Sergeant Steve Vinnedge acted as spotter for the Highway 200 checking station on October 14, 2007.

¶5     Vinnedge had parked his truck in a conspicuous location, perpendicular to the highway, approximately one mile in advance of the checking station. The truck sported the

2

standard red and blue lights and an FWP decal on the side. Vinnedge sat above the truck on a cut bank and observed traffic. He used a spotting scope to look for hunting or fishing equipment or game in the passing vehicles.

¶6 A group of four vehicles, including Clark's pickup truck, drove past Vinnedge at approximately 4:30 p.m. Vinnedge identified two of the vehicles as hunter-related vehicles that should stop at the checking station. After all four vehicles had passed him, he happened to notice that Clark's truck had stopped before reaching the checking station. Vinnedge looked in time to see Clark getting back into his truck. Clark's pickup was not one of the two vehicles that Vinnedge had identified. Clark's stop before the checkpoint, however, raised Vinnedge's suspicions that Clark might have stopped to hide or change "something" before he reached the station. Vinnedge did not see what Clark had done outside of his truck, but estimated that Clark had been stopped for less than five minutes.

¶7 Vinnedge attempted to intercept Clark. Clark had moved on by the time that Vinnedge pulled his truck onto the highway. Vinnedge radioed ahead to Warden Bill Koppen, who was parked 500 yards past the checking station. Vinnedge informed Koppen that Clark had "stopped short." Vinnedge directed Koppen to stop Clark if he failed to stop at the checking station. Vinnedge returned to the spot where Clark had stopped and searched the ditch for evidence that Clark might have been attempting to conceal a hunting violation. Vinnedge found nothing.

¶8 Clark passed the checking station without stopping. Koppen radioed Vinnedge that he would stop Clark. Koppen activated his lights and began following Clark's truck. Clark

3

failed to pull over. Koppen finally activated his siren after approximately eight minutes. It took several more minutes before Clark finally pulled off the road. Koppen testified that Clark's truck repeatedly had crossed the center line and the white fog line of the highway before Clark had pulled over. Koppen testified that three vehicles were in front of Clark when he had activated his lights and that it looked like Clark had wanted to pass the vehicles to put some distance between himself and Koppen.

¶9 Koppen did not observe hunting equipment or game when he approached Clark's vehicle. He did observe wet clothing, beer cans, and a cooler in the bed of Clark's truck. Koppen detected a strong smell of cologne when Clark rolled his window down. Clark was soaking wet and explained to Koppen that he had been "in the creek." Koppen testified that Clark looked terrible and appeared intoxicated. Koppen radioed Warden Vinnedge to contact the Montana Highway Patrol, because he felt Clark was intoxicated. Highway Patrolman Scott Zarske arrived at the scene approximately one hour later. The State eventually charged Clark with driving under the influence of alcohol.

**STANDARD OF REVIEW**

¶10 We review a district court's grant or denial of a motion to suppress evidence to determine whether the court's findings of fact were clearly erroneous and whether its conclusions of law were correct. *State v. Meza*, 2006 MT 210, ¶ 16, 333 Mont. 305, 143 P.3d 422. Findings of fact are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record

4

leaves this Court with a definite and firm conviction that the trial court made a mistake. *State v. McMaster*, 2008 MT 268, ¶ 21, 345 Mont. 172, 190 P.3d 302.

## DISCUSSION

¶11 *Did the game warden have particularized suspicion to stop Clark's truck for a possible fish and game violation?*

¶12 Clark argues that the wardens lacked particularized suspicion to conduct an investigative stop. The existence of particularized suspicion presents a question of fact that the district court determines by considering the totality of the circumstances confronting the officer at the time of the stop. *State v. Hall*, 2004 MT 106, ¶ 8, 321 Mont. 78, 88 P.3d 1273. The State must show objective data from which a trained officer can make inferences and deductions that suggest some sort of criminal activity. *State v. Thomas*, 2008 MT 206, ¶ 10, 344 Mont. 150, 186 P.3d 864; *State v. Gouras*, 2004 MT 329, ¶ 16, 324 Mont. 130, 102 P.3d 27.

¶13 Clark argues that Koppen based the stop of his vehicle and resulting arrest on an impermissible hunch that failed to rise to the level of particularized suspicion under § 46-5-401, MCA. Warden Vinnedge admittedly agreed on cross-examination to a suggestion by Clark's counsel that he had based his decision to stop Clark's vehicle on "just a hunch." Particularized suspicion does not require that a peace officer "possess proof beyond a reasonable doubt that a crime has been committed, to the exclusion of every possible innocent explanation or legal exception." *State v. Hatler*, 2001 MT 38, ¶ 11, 304 Mont. 211, 19 P.3d 822.

5

¶14    Vinnedge's "hunch" stemmed from Clark's stopping short of the checking station. Warden Vinnedge testified that he thought Clark might be trying to conceal, hide, or change something before reaching the checking station. Vinnedge testified that a vehicle has "stopped short" at least once at every checking station where he has worked. He explained that when a vehicle stops short of a game checking station, it raises a concern that a person might be validating a tag on game, or disposing of evidence that he had been hunting before reaching the checking station. Vinnedge possessed a reasonable suspicion based on articulable facts and his own experience from which to draw the inference that Clark might have committed a game violation. *Hatler*, ¶ 10; Section 46-5-401(1), MCA.

¶15    Clark next contends that Warden Koppen lacked particularized suspicion to initiate the stop of his vehicle because he had not yet observed Clark's erratic driving. An arresting officer may rely on information from another officer to establish particularized suspicion. *McMaster*, ¶ 16. Vinnedge communicated to Koppen his suspicions that Clark had committed a fish and game violation, thereby transferring the particularized suspicion possessed by Vinnedge to Koppen. Moreover, the fact that Clark failed to stop at the checking station, when considered in light of Vinnedge's earlier observations, provided Koppen the requisite particularized suspicion. All hunters and fishermen must stop at game checking stations. Section 87-1-208, MCA. The fact that Clark stopped short of the checking station, combined with his failure to stop at the checking station, provided Koppen a set of articulable facts sufficient to support his decision to stop Clark on suspicion that Clark was a hunter who had committed a fish or game violation.

6

¶16    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART