# FILED

March 23 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0443

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 60

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

JUDY HARLOW,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 2007-182
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Robin A. Meguire, Attorney at Law, Great Falls, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

          Mitch Young, Lake County Attorney, Polson, Montana

          Submitted on Briefs:  February 24, 2010

                  Decided:  March 23, 2010

Filed:

          _____
                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Judy Harlow (Harlow) was charged with and pled guilty to two counts of felony Criminal Distribution of Dangerous Drugs and one count of felony Criminal Possession of Dangerous Drugs. She appeals the order of the Twentieth Judicial District Court denying her motion to suppress evidence obtained by way of a concealed electronic transmitter used to tape her telephone conversations with a confidential informant. We affirm.

## ISSUE

¶2 The issue on appeal is whether the District Court erred in denying Harlow's motion to suppress warrantless, nonconsensual recordings of telephone conversations between Harlow and a confidential informant (CI).

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On February 18, 2007, an agent with the Northwest Drug Task Force, Vernon Fisher, was contacted by a credible source (CI#1) to advise that CI#1 had observed drugs, drug-related paraphernalia and drug use while in Harlow's home on February 17. This information provided by CI#1 had not been solicited by Fisher or other law enforcement authorities.

¶4 On March 9, 2007, Fisher was approached by a different credible and reliable CI, CI#2. CI#2 told Fisher that he had recently been to Harlow's residence twice, and had observed drugs and drug paraphernalia in the residence. Additionally, CI#2 reported to Fisher that a man named "Cliff," who was staying at Harlow's house, had offered to sell him marijuana. CI#2 declined, indicating he did not have the money at the time but

2

would call if he could get it. Fisher instructed CI#2 to call Cliff and arrange for a drug buy. CI#2 allowed Fisher to digitally record the call with Cliff. When CI#2 called, Harlow answered the phone but promptly passed it to Cliff upon CI#2's request.

¶5 Cliff and CI#2 arranged a time to meet. Prior to the meeting, CI#2 was fitted with a concealed transmitter to wear during the transaction. When CI#2 arrived at Harlow's home, Harlow conducted the drug transaction rather than Cliff. Using funds provided by the authorities, CI#2 purchased methamphetamine from Harlow and discussed other drugs to which Harlow had access or possession for possible future purchase. CI#2 left the residence, met with the authorities, turned over the drugs to them and described the transaction.

¶6 On March 11, CI#2 notified Fisher that Harlow had called and indicated that she had other drugs available for purchase. Again CI#2 met with authorities, obtained funds to complete the transaction and was fitted with a concealed transmitter to wear while with Harlow. CI#2 then called Harlow on her cell phone to arrange the meeting. Harlow told him that she was not at home, but a friend of hers who was at her house could conduct the transaction. This telephone call was recorded by authorities. CI#2 went to Harlow's home and completed the purchase with "Dan." After leaving Harlow's residence, CI#2 met with authorities and turned over the drugs.

¶7 On March 12, Fisher had CI#2 call Harlow to request more drugs and express dissatisfaction with some of the previously-purchased drugs. Fisher digitally recorded this phone call as well. Harlow spoke openly about the quality of the drugs and the kinds of drugs to which she had access. Following this conversation, Fisher completed an

application for a search warrant for Harlow's home. Upon receiving the warrant, authorities searched Harlow's house, confiscated relevant evidence and arrested Harlow, charging her with the three above-referenced felony charges on October 1, 2007.

¶8 In July 2008, Harlow pled guilty to the charges against her. However, in August 2008, this Court decided *State v. Goetz* and *State v. Hamper*, 2008 MT 296, 345 Mont. 421, 191 P.3d 489 (jointly referred to in this Opinion as *Goetz*). *Goetz* dealt with the constitutionality of warrantless electronic monitoring and recording of face-to-face conversations with a CI, notwithstanding the CI's consent to monitoring. Harlow, relying on our holding in *Goetz*, moved to withdraw her guilty plea on the grounds that the warrantless recordings of her transactions with CI#2 were unconstitutional. She also sought to suppress the evidence obtained through the recordings. The District Court granted her motion to withdraw her plea. The court also granted her suppression motion vis-à-vis the recordings of the face-to-face transactions between Harlow and the CI. However, it denied the motion as it pertained to telephone recordings. Harlow again entered a guilty plea to the charges but filed a timely appeal of the District Court's denial of suppression of the telephone recordings.

## STANDARD OF REVIEW

¶9 We review a district court's grant or denial of a motion to suppress evidence to determine whether the court's findings of fact were clearly erroneous and whether its conclusions of law were correct. Findings of fact are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that the

4

trial court made a mistake. *State v. Clark*, 2009 MT 327, ¶ 10, 353 Mont. 1, 218 P.3d 483 (citations omitted).

**DISCUSSION**

¶10 *Did the District Court err in denying Harlow's motion to suppress evidence obtained through warrantless, nonconsensual recordings of telephone conversations between Harlow and a CI?*

¶11 Relying on our holding in *Goetz*, Harlow asserts that taping her cell phone conversations with CI#2 was unconstitutional under the Fourth Amendment to the United States Constitution and under Article II, Sections 10 and 11 of the Montana Constitution. She opines that our ruling in *Goetz* should be expanded to include telephone conversations. She argues that without the telephone conversation tapes, there was not sufficient evidence to provide probable cause for the search warrant.

¶12 While conceding the applicability of *Goetz* to Harlow's face-to-face conversations with the CI, the State argues, among other things, that Harlow's constitutional argument seeking to expand *Goetz* is irrelevant because ample evidence existed to support a search warrant for Harlow's home even if the telephonic recorded evidence is disregarded. Therefore, the State submits, as we have done on numerous occasions, we should decline to decide this case on constitutional grounds because it is possible to resolve it on other grounds.

¶13 We turn therefore to the other evidence available to the officers to support the warrant application. Section 46-5-221(1) and (2), MCA, provides that "[a] judge shall issue a search warrant to a person upon application . . . that (1) states facts sufficient to support probable cause to believe that an offense has been committed; [and] (2) states

5

facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found . . . ." in the place to be searched. As noted above, CI#1 reported to Task Force Agent Fisher that he had personally observed drug-related activity in Harlow's home in mid-February 2007. In early March 2007, CI#2 supplied first-hand knowledge of such drug activity in Harlow's house that he had witnessed during multiple visits. He also reported that while at Harlow's residence, one of Harlow's acquaintances had offered to sell him drugs. Fisher appropriately included these personal observations in his application for a search warrant. As we held in *State v. Deskins*, 245 Mont. 158, 163, 799 P.2d 1070, 1073 (1990), personal observation of criminal activity by an informant whose reliability can be established provides probable cause. In the case before us, the reliability of both CIs had been established previously and their personal observations provided probable cause for the warrant.

¶14 Moreover, as we stated in *State v. Schwartz*, 2009 MT 234, ¶ 13, 351 Mont. 384, 212 P.3d 1060, "[w]here officers derive evidence in a drug case through an informant and not through contemporaneous unauthorized warrantless electronic monitoring, the evidence available from the informant is admissible." In *Schwartz*, a CI fitted with an electronic transmitting device conducted two drug purchases that were listened to by officers. There was no evidence that the transactional conversations were recorded. At the conclusion of the drug buys, the CI turned over the drugs to agents and discussed with the officers what had happened during the transactions. Schwartz was subsequently charged with criminal distribution of dangerous drugs. As the case proceeded, the State indicated that it would call the CI to the stand during trial and did not intend to introduce

the results of the electronic monitoring. Nonetheless, Schwartz moved to suppress all evidence "obtained as the result of an illegal warrantless search conducted by a confidential informant outfitted with a body wire." *Schwartz*, ¶ 6. The district court denied his motion and we affirmed the district court. *Schwartz*, ¶¶ 7, 14. Citing *State v. Hanley*, 186 Mont. 410, 608 P.2d 104 (1980), we stated "[t]he monitoring and recording were incidental to, not the cause of, the 'seizure of the drugs.' " The informant was the independent source of the information concerning the drug transactions, and the fact that the monitoring and recording occurred does not affect the admissibility of the evidence. *Schwartz*, ¶ 13.

¶15 Therefore, even without the recordings of Harlow's telephone conversations, under *Deskins* and *Schwartz* the personal observations of both CIs were sufficient to show a probability of criminal activity at Harlow's home, and therefore sufficient to support the issuance of the search warrant.

¶16 Having concluded that sufficient evidence existed to support the State's application for a warrant to search Harlow's home, even in the absence of the challenged recorded evidence, we decline to address Harlow's constitutional argument.

## CONCLUSION

¶17 For the foregoing reasons, we affirm the District Court's ruling denying Harlow's motion to suppress evidence derived from recordings of telephone conversations between Harlow and a CI.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ JIM RICE