DA 10-0386

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 48

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

COLBY DEXTER FLYNN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 10-73A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Colin M. Stephens; Smith & Stephens, Missoula, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General, Helena, Montana

      Marty Lambert, Gallatin County Attorney, Erin Murphy,
Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  February 9, 2011

Decided:  March 22, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Colby Dexter Flynn pled guilty to driving under the influence of alcohol and/or drugs but reserved his right to appeal. He appeals from an order of the District Court, Eighteenth Judicial District, Gallatin County, denying his motion to suppress and dismiss. We affirm.

¶2      The only issue Flynn raises on appeal is whether Deputy Lieurance had particularized suspicion to stop Flynn's vehicle.

BACKGROUND

¶3      On August 1, 2009, Deputy Douglas Lieurance, of the Gallatin County Sheriff's Office, was on patrol on Highway 64 near Big Sky, Montana. At approximately 1:30 a.m., Lieurance was traveling westbound in a marked Gallatin County Sheriff's pickup truck. There was a passenger car directly in front of Lieurance's vehicle. In front of the passenger car was a pickup truck, driven by Flynn. All three vehicles were traveling approximately 50 miles per hour, the posted speed limit.

¶4      By virtue of his patrol vehicle's height, Lieurance had a clear view of Flynn's truck over the top of the passenger car. At approximately mile marker 1.7, Lieurance observed Flynn's vehicle cross the fog line to the extent that both right-side tires were traveling entirely on the shoulder of the highway. At mile marker 1.8, Lieurance again observed Flynn's truck leave its lane and cross the fog line, with both right-side tires traveling on the shoulder. This occurred for a third time at mile marker 2.1. Lieurance perceived no road impediments or weather conditions that would have forced or necessitated Flynn to drive in this manner. He activated his emergency lights and pulled over Flynn's truck. Flynn was

subsequently arrested for driving while under the influence of alcohol.

¶5    In District Court, Flynn moved to suppress the evidence resulting from the stop. He argued that Lieurance lacked the requisite particularized suspicion to stop his vehicle. The District Court denied the motion. Flynn appealed to this Court.

## STANDARD OF REVIEW

¶6    This Court reviews the denial of a motion to suppress to determine whether the district court's findings were clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Larson*, 2010 MT 236, ¶ 15, 358 Mont. 156, 243 P.3d 1130. Findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if they are based upon misapprehension of the evidence or if review of the record convinces the Court that a mistake has been made. *Weer v. State*, 2010 MT 232, ¶ 7, 358 Mont. 130, 244 P.3d 311.

## DISCUSSION

¶7    The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons from unreasonable searches and seizures. These protections extend to investigative stops of vehicles. *Larson*, ¶ 19. Under Montana Law, an officer may "stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. To establish particularized suspicion, the State must show (1) objective data from which an officer can make certain inferences, and (2) a resulting particularized suspicion that the occupant of the

motor vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *Weer*, ¶ 10. Particularized suspicion is determined by examining the totality of the circumstances. *State v. Cooper*, 2010 MT 11, ¶ 7, 355 Mont. 80, 224 P.3d 636. An officer must articulate what the suspicious activity consisted of, but the activity itself need not be illegal. *Weer*, ¶ 10; *Larson*, ¶¶ 21-23.

¶8 Flynn's argument consists of three major points. He first asserts that in *State v. Lafferty*, 1998 MT 247, ¶ 14, 291 Mont. 157, 967 P.2d 363, this Court established a bright-line rule that "crossing a fog line on the right side of the right traffic lane does not give rise to the level of suspicious conduct justifying a traffic stop." Second, he argues that the facts of *Lafferty* and *Morris v. City of Great Falls*, 2001 MT 13, 304 Mont. 114, 18 P.3d 1003, control the case at hand and establish that Lieurance lacked a particularized suspicion to stop the truck. Third, Flynn challenges the District Court's finding that his vehicle completely crossed the fog line. We address each argument in turn.

¶9 First, this Court has never laid down the "bright-line" rule that Flynn proposes. The language in *Lafferty*, on which Flynn relies, concluded that it is not "illegal" to drive over a fog line on the far right side of the right traffic lane. *Lafferty*, ¶ 14. This has no application to the case at hand. The State has not asserted, and the District Court did not conclude, that Flynn's driving was illegal. Moreover, this Court has repeatedly confirmed that an officer need not witness illegal driving or a violation of the traffic code in order to have a particularized suspicion. *Weer*, ¶ 10; *Larson*, ¶¶ 21-23; *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, 92 P.3d 1173.

4

¶10     Second, we decline to rely on *Lafferty* and *Morris* because those cases utilized flawed approaches to particularized suspicion. In *Lafferty*, the Court concluded the officer lacked particularized suspicion based, in part, on Lafferty's testimony that she "merely crossed the fog line as she observed [the officer's] patrol car come up behind her." *Lafferty*, ¶ 17. In *Morris*, the Court found a lack of particularized suspicion based, in part, on Morris' testimony "that the road was rutted, and that his usual practice was to attempt to avoid potholes on the road." *Morris*, ¶ 10.

¶11     A defendant's subsequent, valid explanation for conduct that objectively appeared suspicious may affect his or her ultimate liability for a charged offense, but it cannot affect the validity of a stop properly based on particularized suspicion. *Lincolnshire v. Dispirito*, 552 N.E.2d 1238, 1241 (Ill. App. Ct. 2d Dist. 1990); *State v. Kinkead*, 570 N.W.2d 97, 101 (Iowa 1997). The particularized suspicion inquiry is a fact based assessment of the objective quantity, content and reliability of information "*available to the officer.*" *State v. Clawson*, 2009 MT 228, ¶ 11, 351 Mont. 354, 212 P.3d 1056 (emphasis added). An officer in the field need not consider every possible innocent explanation or legal exception before concluding that particularized suspicion exists. *State v. Clark*, 2009 MT 327, ¶ 13, 353 Mont. 1, 218 P.3d 483.

¶12     When this Court first adopted the particularized suspicion standard for vehicular stops, it properly recognized that the inquiry turned on what the officer knew, observed, inferred and ultimately suspected. *State v. Gopher*, 193 Mont. 189, 193-94, 631 P.2d 293, 296 (1981). In nearly three decades since *Gopher*, this Court's articulated test has continued

5

to explicitly focus attention on the officer alone. *See Larson*, ¶ 19. In short, the approach utilized in *Lafferty* and *Morris*, analyzing particularized suspicion in light of defendant testimony, was improper and resulted in flawed analysis. We take this opportunity to clarify that a defendant's after-the-fact explanation for his or her conduct has no bearing on a court's determination of whether an officer possessed particularized suspicion to justify a stop. The extent to which *Morris* and *Lafferty* improperly relied on defendant testimony cannot be discerned. As a result, we decline to rely on them as precedent.

¶13 Third, Flynn fails to show that the District Court clearly erred by finding that "the vehicle completely cross[ed] the fog line three times." Flynn relies on this language in isolation, without regard to the related finding that, "[Lieurance] observed the silver pickup cross over the fog line at approximately mile markers 1.7, 1.8 and 2.1. The silver pickup *crossed the fog line to the extent* that both wheels on the passenger side were over the fog line" (emphasis added). Read in this context, the District Court found that the right-side tires of Flynn's truck completely crossed the right-side fog line. This finding is neither clearly erroneous nor a misapprehension of evidence.

¶14 Finally, the District Court correctly concluded that Lieurance had particularized suspicion to stop Flynn's vehicle.[1] On the evening of August 1, 2009, Lieurance was on heightened alert for indications of impaired driving due to the close proximity of bar closing

---

[1] Flynn also asserts that the District Court incorrectly concluded his driving was "erratic." However, the characterization of Flynn's driving is irrelevant in light of our conclusion that the District Court correctly concluded that there was particularized suspicion to justify the stop.

time. He observed the driver of Flynn's vehicle exhibit repeated inability to remain in a single lane of traffic. In less than half-a-mile of road, at a speed of approximately 50 miles-per-hour, the right-side tires of Flynn's truck fully crossed the right-side fog line three times. Lieurance observed nothing in the roadway or any environmental conditions that would have accounted for Flynn's driving. Furthermore, Lieurance testified that his observations resulted in suspicion of impairment. Lieurance's observations, in conjunction with rational inferences drawn from the time of night and external conditions, reasonably justified the investigatory stop.

¶15    Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE