
DA 12-0699

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 159

STATE OF MONTANA,

          Plaintiff and Appellee,

   v.

ROBERT A. WAGNER,

          Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Nineteenth Judicial District, In and For the County of Lincoln, Cause No. DC-12-56 Honorable James B. Wheelis, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Thane Johnson, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Bernard G. Cassidy, Lincoln County Attorney; Robert Slomski, Deputy Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  May 1, 2013

Decided:  June 18, 2013

Filed:

_____
                       Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 The State charged Robert Andrew Wagner in Lincoln County Justice Court with driving under the influence of alcohol or drugs (third offense), a misdemeanor, in violation of § 61-8-401, MCA, or, in the alternative, § 61-8-406, MCA. Wagner filed a motion to suppress all evidence obtained during the stop of his vehicle. He argued that the officer lacked particularized suspicion for the traffic stop. Following a suppression hearing, the Justice Court denied Wagner's motion. Wagner then pleaded guilty, reserving his right to appeal the Justice Court's suppression ruling.

¶2 Wagner appealed to the Nineteenth Judicial District Court, Lincoln County. The District Court conducted an evidentiary hearing and thereafter denied Wagner's motion to suppress, finding that there was particularized suspicion for the stop of his vehicle. Wagner now appeals to this Court, raising the following issue: Whether the District Court erred in denying Wagner's motion to suppress based upon its determination that the officer had particularized suspicion to justify an investigative stop. We conclude that the District Court did not err, and we accordingly affirm.

## BACKGROUND

¶3 At approximately 2:40 a.m. on April 9, 2012, Lincoln County Sheriff's Deputy John Davis was patrolling southbound on U.S. Highway 2 in Libby near Empire Foods and Town Pump, which are located at the southern edge of town. In front of him, Davis noticed a vehicle that was also traveling southbound on Highway 2. At this location, the highway consists of two southbound and two northbound lanes of travel. Davis's

2

attention was drawn to the vehicle because it was straddling the two southbound lanes of travel; in other words, the vehicle was not in a single lane. Davis observed the vehicle continue to straddle both southbound lanes for 500 to 600 feet. There were no obstructions or roadwork that would have prevented the driver from traveling in one lane. Davis was aware that Montana law requires a vehicle to be operated as nearly as practicable entirely within a single lane. Section 61-8-328(1), MCA.

¶4 Davis followed the vehicle as it proceeded in a southerly direction. He observed the vehicle slowly move into the left southbound lane, without signaling. The vehicle continued in the left lane for roughly one-quarter mile. The vehicle's right blinker then activated and the vehicle moved into the right lane. Davis observed the vehicle weave back and forth within the right lane. The vehicle's left tires crossed the dividing line between the two southbound lanes on two separate occasions, and the vehicle's right tires crossed the fog line on one occasion. The vehicle next signaled and turned right onto Pearl Street, and then signaled again and turned left onto Granite Street. At this point, Davis decided to initiate a traffic stop and activated his overhead lights. The vehicle began signaling and eventually pulled into a driveway. Davis pulled in behind and made contact with the driver, who he ascertained was Wagner.

¶5 Davis had been a deputy with the Lincoln County Sheriff's Office for 15 months at the time he stopped Wagner. Davis had received specialized training for investigations involving driving under the influence. He had made other DUI stops and arrests prior to his stop of Wagner. Davis testified at the suppression hearing that, in light of his training and experience, he believed that Wagner's driving was erratic and suspicious. Based on

3

his observations of Wagner straddling the two southbound lanes of travel, then drifting into the left lane, then weaving back and forth within the right lane, crossing the dividing line on two occasions and the fog line on one occasion, Davis concluded that Wagner might be impaired.

¶6     At the suppression hearing, Davis also discussed the video-recording equipment in his patrol car.  He explained that the video camera runs on a continuous loop 24 hours a day, recording and rerecording over itself on the videotape.  When the patrol car's overhead lights are activated, however, the device automatically saves what was recorded during the 60 seconds before the overhead lights were activated, plus whatever occurs while the overhead lights remain on.  As noted, Davis did not activate his overhead lights until Wagner turned onto Granite Street.  As a result, the video recorder did not capture any of Wagner's erratic driving observed more than a minute prior to his turning onto Granite Street.  Davis acknowledged that he could have activated the video recorder manually, before turning on his overhead lights.  He stated that he did not do so because his usual practice is to let the recorder operate automatically in conjunction with his overhead lights.

¶7     Wagner testified that he clearly remembered the night in question.  He stated that he was familiar with the road and that he always drove on the inside southbound lane in order to avoid collisions with the many deer and moose in the area.  Wagner denied straddling the line dividing the two southbound lanes.  He testified that he stayed within the designated lanes of travel.

4

¶8     The District Court entered findings of fact and conclusions of law. The court expressly found Davis's testimony to be credible and Wagner's testimony to lack credibility. The court concluded that "[t]he facts articulated by Deputy Davis, together with reasonable inferences from those facts, and taking into consideration Deputy Davis' training and experience, led Deputy Davis to a resulting suspicion that Defendant was committing an offense." The court thus ruled that Davis had particularized suspicion to justify an investigative traffic stop of Wagner's vehicle. The District Court accordingly denied Wagner's motion to suppress.

## STANDARDS OF REVIEW

¶9     We review the grant or denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court correctly interpreted and applied the law to those facts. *State v. Nixon*, 2013 MT 81, ¶ 15, 369 Mont. 359, 298 P.3d 408. A court's determination that particularized suspicion exists is a question of fact, which we review for clear error. *State v. Gill*, 2012 MT 36, ¶ 10, 364 Mont. 182, 272 P.3d 60. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *State v. Cooper*, 2010 MT 11, ¶ 5, 355 Mont. 80, 224 P.3d 636.

## DISCUSSION

¶10    Pursuant to § 46-5-401(1), MCA, "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense."

5

To have particularized suspicion for an investigative stop, the peace officer must be possessed of (1) objective data and articulable facts from which he or she can make certain reasonable inferences and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. Where a defendant has filed a motion challenging the legality of a stop, the State must show that there was objective data from which the officer could make inferences and deductions of some sort of criminal activity. *State v. Clark*, 2009 MT 327, ¶ 12, 353 Mont. 1, 218 P.3d 483. Whether particularized suspicion exists is evaluated under the totality of the circumstances confronting the officer at the time of the stop, and requires consideration of the quantity or content of the information available to the officer and the quality or degree of reliability of that information. *City of Missoula v. Moore*, 2011 MT 61, ¶ 16, 360 Mont. 22, 251 P.3d 679; *Clark*, ¶ 12. The officer's experience and training are not the defining element of this analysis; they are only a factor in determining what sort of reasonable inferences the officer is entitled to make from his or her objective observations. *Brown*, ¶ 20.

¶11 We clarified in *State v. Flynn*, 2011 MT 48, 359 Mont. 376, 251 P.3d 143, that the inquiry turns on what the officer knew, observed, or suspected at the time of the stop, and not what the defendant subsequently testifies to. We stated:

> A defendant's subsequent, valid explanation for conduct that objectively appeared suspicious may affect his or her ultimate liability for a charged offense, but it cannot affect the validity of a stop properly based on particularized suspicion. The particularized suspicion inquiry is a fact based assessment of the objective quantity, content and reliability of information *available to the officer*. An officer in the field need not

6

consider every possible innocent explanation or legal exception before concluding that particularized suspicion exists.

*Flynn*, ¶ 11 (emphasis in original, citations and internal quotation marks omitted).

¶12 Moreover, while a statutory violation alone is sufficient to establish particularized suspicion for an investigative stop, it is not necessary that an officer observe a moving violation in order to support a particularized suspicion of driving under the influence. *State v. Schulke*, 2005 MT 77, ¶¶ 16-17, 326 Mont. 390, 109 P.3d 744; *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, 92 P.3d 1173. We do not require an officer to identify a particular statutory violation or cite a defendant for a moving violation to establish a particularized suspicion. *Schulke*, ¶ 18 ("the fact that Schulke was not cited for anything beyond DUI and minor in possession of alcohol does not destroy the officer's particularized suspicion to make a stop based upon erratic driving"). The question, in other words, is not whether any one of the defendant's driving aberrations was itself illegal; rather, it is whether the officer can point to objective and articulable facts which, taken together, with reasonable inferences that may be drawn therefrom, warranted a suspicion of criminal wrongdoing. *Weer v. State*, 2010 MT 232, ¶ 10, 358 Mont. 130, 244 P.3d 311; *Brander*, ¶ 6; *Brown*, ¶ 20.

¶13 Wagner argues that the absence of any erratic driving depicted in the patrol car video contradicts Davis's testimony that Wagner drove his vehicle erratically. Wagner maintains that the District Court gave Davis's testimony "preferential treatment" and that, when compared to this Court's other cases involving investigative stops, Wagner's driving does not rise to the level needed to establish particularized suspicion.

7

¶14 The State, on the other hand, argues that Davis possessed particularized suspicion of an offense in light of Wagner's erratic driving, which was indicative of driving under the influence of alcohol or drugs in violation of § 61-8-401 or -406, MCA, as well as Wagner's failure to operate his vehicle as nearly as practicable entirely within a single lane of travel in violation of § 61-8-328(1), MCA. The State further maintains that the absence of video evidence of Wagner's impaired driving (prior to Davis's activation of his overhead lights) does not defeat Davis's particularized suspicion.

¶15 We agree with the State that the circumstances observed by Davis at the time supported a particularized suspicion to conduct an investigative stop of Wagner's vehicle. As an initial matter, we note that it is not this Court's function, on appeal, to reweigh conflicting evidence or to substitute our evaluation of the evidence for that of the trial court. *State v. Deines*, 2009 MT 179, ¶ 20, 351 Mont. 1, 208 P.3d 857. We defer to the trial court in cases involving conflicting testimony because we recognize that the court had the benefit of observing the demeanor of witnesses and rendering a determination of the credibility of those witnesses. *Deines*, ¶ 20.

¶16 In the instant case, the District Court specifically noted that it found Davis's testimony credible and Wagner's testimony lacking credibility. Davis testified that he first observed Wagner's vehicle at around 2:40 a.m. The vehicle was straddling the two southbound lanes of travel for 500 to 600 feet. It then drifted into the left lane without signaling. After about a quarter mile, the vehicle signaled and moved into the right lane. The vehicle weaved back and forth as it proceeded southbound in the right lane. It crossed the dividing line on two occasions and the fog line on one occasion. These

objective and articulable facts, taken together, substantiated Davis's suspicion that the driver, Wagner, might be impaired. Additionally, Davis's testimony also substantiates that Wagner violated § 61-8-328(1), MCA, which required him to operate his vehicle "as nearly as practicable entirely within a single lane." Davis testified that there were no obstructions or roadwork that would have prevented Wagner from traveling in one lane. We conclude, therefore, that the District Court, upon accepting Davis's testimony as credible, correctly determined that Davis had a particularized suspicion to justify the stop of Wagner's vehicle.

¶17 Regarding the absence of video evidence of erratic driving, we have previously concluded that "there is no reason to view with distrust the failure of a police officer to record events creating particularized suspicion for a traffic stop." *Deines*, ¶ 23. The absence of video evidence does not negate the sworn statements of a peace officer, whom the trial court finds credible, concerning his observations in the field. *Deines*, ¶¶ 20-22. Hence, the District Court's determination that Davis's sworn statements established a particularized suspicion, notwithstanding the absence of video evidence, was not clearly erroneous.

## CONCLUSION

¶18 We conclude that there were sufficient facts for Davis to form a particularized suspicion that Wagner was committing an offense and, thus, to initiate an investigative stop. Accordingly, the District Court did not err in denying Wagner's motion to suppress.

¶19 Affirmed.

/S/ LAURIE McKINNON


We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE